IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN  DISTRICT OF GEORGIA
ATLANTA DIVISION

ANTAVIUS M. WEEMS

     Plaintiff,

v.

CITY OF EAST POINT, GEORGIA;
and

DEANA HOLIDAY-INGRAHAM, in
her individual and official capacity;

and
COUNCILWOMAN SHARON
SHROPSHIRE, in her individual and
official capacity;

and

JOHN and JANE DOES 1-5, in their
individual and official capacities,

     Defendant.

Civil Action No.:

Jury Trial Demanded

## **COMPLAINT**

COMES NOW Plaintiff Antavius M. Weems ("Mr. Weems"), by and through his undersigned counsel, and files this Complaint against the City of East Point, GA ("the City") and individual officials, seeking redress for their violation

1

of his rights under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Georgia contract law.

## INTRODUCTION

This action arises from Defendants' unlawful termination of Mr. Weems's employment in retaliation for his protected speech opposing corruption, abuse of power, and illegal retaliatory conduct by city officials, including his candid, off-duty comments to a councilmember at a private restaurant after business hours urging her to apologize to the Municipal Court Administrator and abandon a retaliatory plan to have her terminated. Mr. Weems also seeks damages for the City's flagrant breach of multiple written employment contracts. Plaintiff seeks compensatory and special damages, declaratory and injunctive relief, and attorneys' fees and costs.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over the federal claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this case involves questions arising under the Constitution of the United States and federal civil rights statutes.

2.      This Court has supplemental jurisdiction over the state law claims for breach of contract pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy.

3. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b), as the events and omissions giving rise to the claims occurred within this district, and all Defendants reside or are located in this district.

**PARTIES**

4. Plaintiff Antavius M. Weems ("Weems") is a citizen of the United States and a resident of Fulton County, Georgia, and at all relevant times was also a resident and taxpayer of the City of East Point and an engaged participant in its civic affairs. At all times relevant to this Complaint, he was employed by the City of East Point, including as its City Attorney and City Solicitor.

5. Defendant City of East Point is a municipal corporation organized and existing under the laws of the State of Georgia. The City is responsible for the policies, practices, and operations of the East Point City Council and its various departments. The City of East Point may be served with process through its City Manager, Redmond D. Jones II, at 2757 East Point Street, East Point, Georgia 30344.

6. Defendant Deana Holiday-Ingraham was, at the relevant time, the Mayor of the City of East Point and is sued in her individual and official capacities. She can be served at 3631 Lake Estates Way Atlanta, GA 30394.

7. Defendant Councilwoman Sharon Shropshire was, at the relevant time, a member of the East Point City Council and is sued in her individual and

3

official capacities. She can be served at 2281 Delowe Drive, East Point, GA 30034-2125.

8.     Defendants John and Jane Does 1-5 are other members of the East Point City Council or other city officials whose identities are not yet fully known but who participated in the decisions and acts alleged herein. They are sued in their individual and official capacities.

## PRE-SUIT NOTICE

9.     Plaintiff has complied with all conditions precedent to filing this action. On December 26, 2025, Plaintiff, through counsel, provided written ante litem notice to the City of East Point of his claims for money damages, pursuant to Ga. Code Ann. § 36-33-5.

10.     The City has been afforded an opportunity to resolve these claims but has failed to do so.

11.     No further exhaustion of administrative remedies is required for Plaintiff's claims under 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

12.     Plaintiff Antavius M. Weems is a dedicated public servant who was employed by the City of East Point in various legal capacities from approximately April 2005 until his wrongful termination on or about January 23, 2024, concluding nearly two decades of service.

4

13.    In addition to his roles as a municipal attorney, Mr. Weems is a resident and taxpayer of the City of East Point and has regularly participated in the civic affairs of the community.

14.    Throughout his extensive tenure with the City, Mr. Weems consistently performed his duties with a high degree of professionalism and integrity. Upon information and belief, at no time prior to the events described herein was Mr. Weems ever counseled, disciplined, or otherwise questioned regarding his performance or the quality of his work.

15.    At the time of his termination, Mr. Weems was providing legal services to the City pursuant to four separate, valid, and enforceable written contracts, reflecting the City's long-standing trust in his legal counsel and expertise.

16.    The first contract was an employment agreement for the position of City Attorney ("City Attorney Contract"), which was not scheduled to expire until April 24, 2024. The City Attorney Contract provided for a monthly salary of $8,000 and stipulated that Mr. Weems could not be terminated from this role without the approval of at least five (5) voting members of the City Council. The contract further provided that if Mr. Weems was terminated without cause prior to the end of his term, he was contractually entitled to a severance payment equivalent to six months of his salary, amounting to $48,000.

17.    The second contract was for the position of City Solicitor ("City Solicitor Contract"), which renewed automatically each August. At the time of his termination in January 2024, approximately seven months remained on the contract's term. This contract provided for a monthly salary of $5,400, plus compensation for other billable activities at a rate of $250 per hour. Mr. Weems's average monthly billable hours under this contract were approximately $14,000.

18.    The third contract was for the position of Counsel for the City's 50 Worst Program, a dilapidated property remedial program ("50 Worst Program Contract"). This contract had no specific expiration date and earned his firm approximately $17,000 per month.

19.    The fourth contract was for the position of Workout Counsel for a CDBG Housing Program ("CDBG Contract"). This contract also had no specific expiration date and earned his firm approximately $15,000 per month.

20.    The contractual requirement of a supermajority vote for the termination of the City Attorney is consistent with the City of East Point's Charter, and City Ordinance No. 016-13, 7-1-13 § 2-4006(e)(4), which are intended to insulate the City Attorney from improper political influence and retaliation.

**PROTECTED SPEECH AND EVENTS LEADING TO TERMINATION**

21.    The events giving rise to this action began on or about August 28, 2023, when Mr. Weems received a call from Municipal Court Administrator

Kimberly Propst. Ms. Propst reported that she had just been contacted by Defendant Councilwoman Shropshire, who was upset about a fine assessed against her relative and aggressively demanded that the fine be refunded immediately.

22.     Mr. Weems advised Ms. Propst that she was correct to refuse the councilwoman's inappropriate request. When Ms. Propst expressed fear of retaliation for performing her duties correctly, Mr. Weems, acting in the City's best interest, assured her he would take steps to prevent any such retaliation.

23.     Shortly after the call, Ms. Propst memorialized the incident in a written account, which she emailed to Mr. Weems and the City's Human Resources department. Upon information and belief, this email, which will be sought in discovery, constituted a formal complaint of improper conduct and abuse of power.

24.     Between August 28, 2023, and October 27, 2023, Mr. Weems made several efforts to resolve the situation informally with Defendant Shropshire, including phone calls and in-person conversations in which he urged her to apologize to Ms. Propst and to refrain from retaliating against her for properly performing her duties as Municipal Court Administrator.

25.     On or about September 3 or 4, 2023, Mr. Weems met with Defendant Shropshire and her personal attorney at a local restaurant over dinner, away from City Hall and outside normal business hours, to discuss the call she had placed to Ms. Propst on August 28, 2023.

7

26.    During this dinner meeting, Mr. Weems explained that her call violated at least three City ordinances that he had identified and that her behavior had exposed the City to substantial legal liability, and he urged her to resolve the matter by apologizing to Ms. Propst and abandoning any retaliatory efforts against her.

27.    In this candid, off-premises conversation, Mr. Weems spoke not only as the City's lawyer but also as a concerned resident and citizen of East Point, admonishing an elected official to comply with the law, respect the City Charter, and avoid abusing her public office to punish a municipal employee.

28.    As they were leaving the restaurant, Mr. Weems commented to Defendant Shropshire that the matter could have been easily resolved if she had apologized to Ms. Propst and shown remorse for her conduct, reiterating his earlier admonitions that she should not use her position to retaliate against a City employee who had done nothing wrong.

29.    Defendant Shropshire responded with profane indifference, stating, "I don't give a f***, she gotta go." This exchange evidences Defendant Shropshire's retaliatory intent toward Ms. Propst in direct response to Mr. Weems's off-duty criticism of her abuse of power, and Mr. Weems's restaurant comments—made as a citizen and resident to an elected official in a public restaurant after hours—are a

8

central instance of his protected speech opposing retaliation and official misconduct.

30.   On November 6, 2023, at a regular meeting of the City Council, Mr. Weems addressed the Council and spoke in opposition to Defendant Shropshire's proposal to change Ms. Propst's reporting structure, which Mr. Weems identified as a transparent and unlawful retaliatory effort to facilitate Ms. Propst's termination, consistent with the concerns he had already expressed to Defendant Shropshire during their private, off-duty conversation at the restaurant.

31.   This speech was a matter of public concern, as it related to official misconduct, abuse of power, potential legal liability for the City, and the proper administration of government.

32.   During his presentation to the Council, and in further support of his efforts to prevent unlawful retaliation against Ms. Propst, Mr. Weems presented research confirming that the court administration structures in at least eight other Georgia municipalities, including Atlanta, Brookhaven, and Sandy Springs, were inconsistent with the proposed retaliatory change.

33.   He also shared that the Georgia Municipal Association advised against the structure being proposed and that the City itself had abandoned that very model five years prior in response to threatened litigation.

34. Upon information and belief, Mr. Weems's official duties as City Attorney, as defined by the City Charter, his employment contract, and the established customs and practices of the City, did not include a duty or requirement to publicly oppose a policy decision supported by a majority of the City Council in a public meeting, particularly on a politically charged matter.

35. In publicly presenting his research and advocating against the proposed retaliatory action, he stepped beyond the boundaries of his prescribed job functions and acted in his capacity as a concerned citizen and taxpayer seeking to prevent unlawful and corrupt conduct by elected officials.

36. At the same meeting, Chief Judge Oliver made a presentation that Mr. Weems believed was flawed and self-serving, creating a pretext for the Council to approve the retaliatory change.

37. Following the meeting, Mr. Weems privately expressed to Judge Oliver that her presentation was inappropriate and inconsistent with the Charter's separation-of-powers framework and his earlier objections to retaliation against Ms. Propst, which angered the Judge and prompted her to question Mr. Weems's own fitness to serve.

38. On or about January 23, 2024, the City Council held a special called meeting. After briefing the Council on the status of pending investigations unrelated to this matter, Mr. Weems was excused from the meeting.

10

39.     Approximately 30 minutes later, he was summarily informed that his employment and all related contracts with the City were terminated, effective immediately, upon information and belief after lobbying by Defendant Shropshire and others angered by his off-duty admonitions to her at the restaurant and his subsequent opposition to their retaliatory scheme.

40.     The termination of Mr. Weems occurred in close temporal proximity to his protected off-duty remarks to Defendant Shropshire at the restaurant urging her to apologize and abandon her retaliatory plan, and to his later public opposition at the November 6, 2023 City Council meeting to the unlawful retaliatory scheme against Ms. Propst, giving rise to a strong inference that his protected activities were the motivating factor in Defendants' decision to terminate him.

41.     Upon information and belief, the formal vote, minutes, and any recordings of the executive session where Mr. Weems's termination was decided will demonstrate that the termination was a direct result of his opposition to the misconduct of Defendant Shropshire and other city officials, including his off-duty admonitions to Defendant Shropshire at the restaurant and his continued public opposition to their retaliatory scheme. These records have not been publicly produced and will be sought in discovery.

**MOTIVE, RETALIATORY ACTS, AND PRETEXT**

11

42.    The close temporal proximity between Mr. Weems's protected off-duty remarks to Defendant Shropshire at the early-September 2023 restaurant meeting, his subsequent public opposition at the November 6, 2023 City Council meeting to the retaliatory change in Ms. Propst's reporting structure, and his summary termination on or about January 23, 2024, establishes a strong inference of a causal connection between his protected conduct and the adverse employment action.

43.    Upon information and belief, Defendants did not terminate Mr. Weems for any legitimate, performance-related reason. Instead, the termination was a direct and unlawful reprisal for his protected speech, including his off-duty restaurant comments urging Defendant Shropshire to apologize to Ms. Propst, comply with the City Charter and applicable ordinances, and abandon her retaliatory plan to have Ms. Propst terminated, as well as his ongoing efforts to shield Ms. Propst from retaliation and to prevent the City from engaging in unlawful conduct.

44.    Upon information and belief, Defendant Shropshire was angered by Mr. Weems's criticism at the restaurant and thereafter advocated with Defendant Mayor Deana Holiday-Ingraham and other councilmembers for his removal because of those comments and his continued opposition to her retaliatory scheme.

12

45.    At the time of his termination, and to date, Defendants have failed to provide Mr. Weems with any contemporaneous, legitimate, non-retaliatory basis for their decision. This absence of a valid justification, coupled with Mr. Weems's long and unblemished service record and his recent off-duty criticism of a councilmember's abuse of power, is further evidence that the true motive was retaliatory and that any reasons subsequently offered by Defendants will be mere pretext for their unlawful conduct.

46.    The City's failure to follow its own contractual and procedural requirements for terminating Mr. Weems, including, upon information and belief, the failure to secure the contractually-mandated five-vote supermajority and the refusal to pay the contractually-obligated severance, demonstrates a retaliatory animus and arbitrary and capricious conduct, particularly where these protections were disregarded shortly after Mr. Weems's off-duty restaurant admonitions to Defendant Shropshire and his related advocacy against retaliation.

47.    Upon information and belief, the retaliatory motive for Mr. Weems's termination was shared among a majority of the City Council members, who were displeased not only with his efforts to ensure the City complied with the law and its own ethical standards, but specifically with his off-premises restaurant admonition to Defendant Shropshire and his continued insistence that she had acted improperly toward Ms. Propst and should apologize and cease her retaliatory efforts.

13

48. Evidence of this retaliatory motive and pretext is contained in communications and documents that must be preserved for discovery. This evidence includes, but is not limited to, all electronically stored information (ESI) such as emails, text messages, and voice recordings exchanged by and between Defendant Mayor Deana Holiday-Ingraham, Defendant Councilwoman Shropshire, Chief Judge Rashida Oliver, and other city officials concerning Mr. Weems or Ms. Propst from August 2023 to the present, including specifically any communications referencing or discussing the September 3–4, 2023 restaurant meeting, Mr. Weems's comments at that meeting, and the reactions of these officials to his off-duty admonitions.

49. Witnesses with direct knowledge of the facts supporting Defendants' retaliatory motive include Kimberly Propst, the individual Defendants, and other City employees who observed the interactions and events leading to Mr. Weems's termination, including those aware of Defendant Shropshire's reaction to Mr. Weems's restaurant comments and any related discussions about terminating him.

## CAUSES OF ACTION

### COUNT ONE
### RETALIATION AGAINST ALL DEFENDANTS
**(U.S.C.A Const. Amend. 1 and Section 1983)**

50.    Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

51.    The First Amendment to the United States Constitution, made applicable to the states and their political subdivisions through the Fourteenth Amendment, protects public employees from retaliation by their employers for speaking as citizens on matters of public concern. Defendants, acting under color of state law, violated Mr. Weems's clearly established First Amendment rights.

52.    Mr. Weems's speech and conduct addressed matters of paramount public concern, including but not limited to: (a) official misconduct and abuse of power by an elected official; (b) the illegality of retaliating against a public employee for performing her duties; (c) the City's potential liability and the wasteful expenditure of public funds in defending such unlawful actions; and (d) the proper and ethical administration of the City's government and judicial functions. Such topics are not mere employee grievances but are subjects of "political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983).

53.    These matters were central to, among other things, Mr. Weems's candid admonitions to Defendant Shropshire at a private restaurant meeting in early September 2023—held away from City Hall and after business hours—where he urged her to apologize to Court Administrator Propst, abandon her retaliatory

15

efforts to have Ms. Propst terminated, and comply with the City Charter and applicable ordinances rather than misuse her office to punish a municipal employee who had done nothing wrong.

54.    In speaking on these matters, and particularly during his off-duty conversation with Defendant Shropshire at the restaurant as described above, Mr. Weems spoke as a private citizen and resident of the City of East Point, outside any formal City proceeding and outside normal working hours, urging an elected official not to abuse her public power or retaliate against a municipal employee for carrying out her duties.

55.    His status as City Attorney informed his knowledge of the relevant ordinances and potential liability, but his restaurant remarks were a candid, personal admonition by a citizen-taxpayer to an elected representative about adherence to law and the avoidance of corruption and retaliation.

56.    His later remarks at the November 6, 2023 City Council meeting—opposing the proposed change to Ms. Propst's reporting structure and warning of its retaliatory and unlawful nature—were consistent with and reinforced the same concerns he had already expressed off-duty at the restaurant and likewise addressed matters of public concern, even though they were conveyed in a formal governmental setting.

16

57.    Taken together, his speech constituted civic advocacy for lawful and ethical governance, not mere internal personnel commentary. Crucially, Mr. Weems's duties did not require him to publicly oppose a council majority on a politically charged policy matter; by doing so, he was not simply performing his job but was engaging in protected citizen speech aimed at holding his government accountable.

58.    Under the *Pickering* balancing test, Mr. Weems's First Amendment interest in exposing official misconduct and preventing illegal retaliation far outweighs any legitimate interest the City could have in promoting the efficiency of its public services. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

59.    His off-premises, off-duty admonition to Defendant Shropshire at the restaurant—urging her to apologize to Ms. Propst, cease her retaliatory plan, and comply with the Charter and ordinances—was intended to promote, not impair, governmental efficiency by avoiding unlawful retaliation, preserving the integrity of the municipal court, and preventing the wasteful expenditure of public funds on defending illegal conduct.

60.    Upon information and belief, his speech caused no actual disruption to the City's services or working relationships, other than the displeasure and personal animus of those officials whose misconduct and abuse of power he opposed.

17

61.    Mr. Weems's protected speech was a substantial and motivating factor in Defendants' decision to terminate his employment and contracts. This is evidenced by, among other things, the close temporal proximity between (a) his off-duty, private admonitions to Defendant Shropshire at the early-September 2023 restaurant meeting—where, as a resident and taxpayer of East Point, he urged her to apologize to Ms. Propst, comply with the City Charter and ordinances, and abandon her retaliatory plan to have Ms. Propst terminated—and (b) his subsequent public opposition at the November 6, 2023 City Council meeting to the retaliatory change in Ms. Propst's reporting structure, on the one hand, and his summary termination on January 23, 2024, on the other, as well as the absence of any legitimate, documented, non-retaliatory reason for the termination.

62.    The City of East Point is liable for this constitutional violation under 42 U.S.C. § 1983. The decision to terminate Mr. Weems was made by the City Council, which is the final policymaking authority for the City with respect to the employment and termination of the City Attorney. This official act represents the City's policy and was the moving force behind the violation of Mr. Weems's rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

63.    Accordingly, the City is directly liable, and the claims against the individual Defendants in their official capacities are claims against the City.

64. The individual Defendants are liable in their individual capacities because they personally participated in the retaliatory conduct by, inter alia, advocating for, voting for, and effectuating Mr. Weems's termination in response to his protected speech, including his off-duty restaurant comments to Defendant Shropshire and his subsequent public opposition to her retaliatory scheme at the November 6, 2023 City Council meeting.

65. The individual Defendants are not entitled to qualified immunity because the law was clearly established at the time of their actions that terminating a public employee in retaliation for speech exposing official misconduct, corruption, and illegality violates the First Amendment. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Connick v. Myers*, 461 U.S. 138, 146–48 (1983).

66. No reasonable official in Defendants' positions could have believed it was lawful to fire the City's chief legal officer for, among other things, his off-premises, off-duty speech as a citizen at a private restaurant admonishing an elected official not to abuse her power or retaliate against a municipal employee.

67. Even if any portion of Mr. Weems's in-meeting remarks were deemed to fall within his official duties, it was clearly established that public officials may not terminate an employee for his separate, off-duty citizen speech on matters of public concern, such as opposition to retaliation and abuse of power.

68. As a direct and proximate result of Defendants' unlawful retaliation for his protected speech, Mr. Weems has suffered, and will continue to suffer, significant damages, including but not limited to lost wages, loss of future earning capacity, emotional distress, mental anguish, and reputational harm.

69. For this violation, Plaintiff is entitled to an award of compensatory and special damages, declaratory and injunctive relief, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT TWO**
**FREEDOM OF ASSOCIATION AND**
**VIEWPOINT DISCRIMINATION**
**(42 U.S.C. § 1983)**

70. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

71. In the alternative to Count I, Defendants' actions violated Mr. Weems's clearly established First Amendment rights to freedom of association and freedom from viewpoint discrimination.

72. The First Amendment protects a public employee's right to associate with others for the purpose of advancing beliefs and ideas. Mr. Weems engaged in protected associational activity by aligning himself with Municipal Court Administrator Kimberly Propst to oppose unlawful retaliation and abuse of power by city officials, including by advocating on her behalf and urging that she not be terminated during his off-duty restaurant meeting with Defendant Shropshire and

20

her attorney in early September 2023. Defendants terminated Mr. Weems in substantial part because of this association with, and advocacy for, a whistleblower who had reported an elected official's misconduct.

73. Furthermore, the First Amendment forbids the government from discriminating against speech based on its viewpoint. Defendants' termination of Mr. Weems was an act of unlawful viewpoint discrimination, as it was motivated by their disagreement with the content and viewpoint of his speech—namely, his expressed view, including at the off-premises restaurant meeting and thereafter, that the conduct of Defendant Shropshire and other officials toward Ms. Propst was unlawful, unethical, retaliatory, and exposed the City to legal and financial liability.

74. Defendants sought to punish and silence Mr. Weems for his viewpoint, which was critical of their actions and their retaliatory treatment of Ms. Propst, while permitting and acting upon the contrary viewpoints of others, such as Chief Judge Oliver, who supported or facilitated the proposed change in Ms. Propst's reporting structure.

75. The law is clearly established that public officials may not retaliate against an employee for his associations or for the viewpoint he expresses on matters of public concern, including off-duty speech and advocacy addressed to an elected official about abuse of power and retaliation. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Connick v. Myers*, 461 U.S. 138, 146–48 (1983). No

21

reasonable official would believe it was lawful to terminate an employee under these circumstances. Defendants are therefore not entitled to qualified immunity.

76.    As a direct and proximate result of Defendants' unlawful retaliation based on his protected associations and viewpoints, including those expressed during the off-duty restaurant meeting with Defendant Shropshire and his continued advocacy on behalf of Ms. Propst, Mr. Weems has suffered significant damages as previously alleged.

**COUNT THREE**
**BREACH OF CONTRACT**
**AGAINST CITY OF EAST POINT**
**(City Attorney Agreement)**

77.    Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

78.    On or about December 11, 2023, Plaintiff and the City of East Point entered into a valid and enforceable contract renewal for Plaintiff to serve as City Attorney ("City Attorney Contract")

79.    Mr. Weems fully performed all conditions, covenants, and promises required of him under the City Attorney Contract up until the date of his wrongful termination.

80.    The City of East Point committed a material breach of the City Attorney Contract by, inter alia: a. Terminating Mr. Weems's employment without

the contractually mandated approval of at least five (5) voting members of the City Council; and b. Failing and refusing to pay Mr. Weems the contractually required severance payment equivalent to six (6) months of his salary, totaling $48,000, upon his termination without cause.

81. As a direct and proximate result of the City's breach, Mr. Weems has suffered damages in an amount not less than $48,000, plus pre-judgment and post-judgment interest.

82. The City's defense of sovereign immunity is waived as to this claim. Under Georgia law, sovereign immunity does not bar actions against a municipality for the breach of a written contract. Ga. Code Ann. § 50-21-1.

83. The City's breaches were undertaken in bad faith, entitling Plaintiff to an award of his expenses of litigation, including reasonable attorneys' fees, pursuant to Ga. Code Ann. § 13-6-11.

**COUNT FOUR**
**BREACH OF CONTRACT**
**AGAINST CITY OF EAST POINT**
**(City Solicitor Contract)**

84. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

85. On or about August 1, 2022, Plaintiff and the City entered into a valid and enforceable written contract for Plaintiff to serve as City Solicitor ("City Solicitor Contract").

23

86.   The City Solicitor Contract provided for automatic annual renewal each August and compensated Mr. Weems with a monthly salary of $5,400, plus $250 per hour for other billable activities. At the time of his wrongful termination in January 2024, approximately seven months remained on the contract's term.

87.   Mr. Weems fully performed all conditions, covenants, and promises required of him under the City Solicitor Contract.

88.   The City committed a material breach of the City Solicitor Contract by terminating it without cause prior to the expiration of its term.

89.   As a direct and proximate result of the City's breach, Mr. Weems has suffered damages consisting of lost compensation for the remaining seven months of the contract term. Based on an average monthly compensation of approximately $19,400, this amount is believed to be not less than $135,800, plus interest.

90.   The City's defense of sovereign immunity is waived for this action ex contractu.

91.   Plaintiff is entitled to an award of attorneys' fees and expenses of litigation pursuant to Ga. Code Ann. § 13-6-11, as the City has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense.

**COUNT FIVE**
**BREACH OF CONTRACT**
**AGAINST CITY OF EAST POINT**
**(50 Worst Program and CDBG Contract)**

24

92.    Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

93.    Plaintiff and the City entered into two additional valid and enforceable written contracts for legal services: one for the City's 50 Worst Program ("50 Worst Program Contract") and another for the CDBG Housing Program ("CDBG Contract").

94.    The 50 Worst Program Contract compensated Mr. Weems's firm approximately $17,000 per month, and the CDBG Contract compensated his firm approximately $15,000 per month.

95.    Mr. Weems fully performed all conditions, covenants, and promises required of him under both the 50 Worst Program Contract and the CDBG Contract until they were wrongfully terminated.

96.    The City committed a material breach of these contracts by terminating them without cause and without reasonable notice, repudiating its obligations thereunder.

97.    As a direct and proximate result of the City's breaches, Mr. Weems has suffered damages. For the 50 Worst Program Contract, damages are not less than $187,000. For the CDBG Contract, damages are not less than $165,000. These

25

amounts represent lost income for the remainder of the 2024 calendar year, plus pre-judgment and post-judgment interest.

98.   The City's sovereign immunity is waived as to these claims for breach of written contracts.

99.   The City's actions were taken in bad faith, entitling Plaintiff to an award of his expenses of litigation and reasonable attorneys' fees pursuant to Ga. Code Ann. § 13-6-11.

## PRAYER FOR RELIEF

1. Wherefore, Plaintiff demands judgment against Defendants as follows:

    a. a declaration that Defendants' conduct violated Plaintiff's rights secured by the First and Fourteenth Amendments to the United States Constitution;

    b. an award of compensatory and special damages in an amount to be determined by the enlightened conscience of the jury;

    c. an award of contractual damages in an amount not less than $535,800, plus interest;

    d. an award of punitive damages against the individual Defendants in their individual capacities;

    e. an award of reasonable attorneys' fees and the costs of this action pursuant to 42 U.S.C. § 1988 and Ga. Code Ann. § 13-6-11;

26

f.  an award of pre-judgment and post-judgment interest at the maximum

legal rate;

g.  an order of reinstatement or, in the alternative, an award of front pay;

h.  Such other relief as this court deems just and appropriate.

Respectfully submitted, the 22nd  day of January 2026.

/S/ Arnold J. Lizana
Law Offices of Arnold J. Lizana III
GA Bar No.: 698758
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
T: (404) 207-1559
alizana@attorneylizana.com

**ATTORNEY FOR PLAINTIFF**

27